UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM A. MITCHELL, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:10-cv-01191-JMS-MJD |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff William Mitchell applied for Supplemental Social Security Income and Disability Insurance Benefits (collectively "disability benefits") from the Social Security Administration in August 2007.[1] His applications were denied both initially and upon reconsideration by the Defendant, Commissioner of the Social Security Administration ("the Commissioner"). Administrative Law Judge Michael Scurry ("ALJ") held a hearing in December 2009 and later issued a finding that Mr. Mitchell was not entitled to disability benefits. Mr. Mitchell has filed this action under 42 U.S.C. § 405(g), asking the Court to review his denial of benefits.

**I.**
**BACKGROUND**

Mr. Mitchell, now 44 years old, alleges he became disabled and unable to work on September 1, 2006, due to chronic pain stemming from a severe back injury and hip fracture suffered in an accident in 1995. [Dkt. 18-5 at 2, 8; Dkt. 18-6 at 7; R. at 123, 129, 150.] Prior to

---

[1] The disability standards for the two programs are the same, as is relevant to this action. *See* 20 C.F.R. § 404.1501 *et seq., see also* 20 C.F.R. § 416.901 *et seq.*

2006, Mr. Mitchell worked as a machine operator, gas station attendant, and factory worker. [Dkt. 18-2 at 18, 52-54; R. at 17, 51-53.]

**A)    Medical Evidence**

Mr. Mitchell did not have a family physician and, therefore, typically sought treatment for his chronic back pain from a walk-in clinic.  [Dkt. 18-8 at 24, 40; R. at 349, 366.]  In September 2006, Dr. Vishwajit Brahmbhatt evaluated Mr. Mitchell regarding management of his left hip and chronic lower back pain.  [*Id.*]  In his report, Dr. Brahmbhatt noted that Mr. Mitchell fell from a second story building in 1995, which resulted in a severely injured back and a fractured hip.  [*Id.*]  Although Mr. Mitchell underwent hip repair, he complained of a continual struggle with back pain and flare up.  [*Id.*]  Mr. Mitchell described this discomfort as "burning and aching with a sharp, stabbing sensation across the lower back," pain that radiates down to his hip region, gets worse with physical activity, and seems to interfere with his sleep.  [Dkt. 18-8 at 24; R. at 349.]  Mr. Mitchell was treated with low dosages of narcotics that "seemed to work quite well for him."  [*Id.*]  Dr. Brahmbhatt observed that Mr. Mitchell kept his left leg quite straight while sitting in a chair but noted that "his facial expressions at times were exaggerated." [Dkt. 18-8 at 24-25; R. at 349-350.]  Mr. Mitchell's lower back showed no deformity but he reported excruciating tenderness even to the slightest touch.  [Dkt. 18-8 at 25; R. at 350.]  The range of motion of Mr. Mitchell's spine was severely restricted, "most probably secondary to poor effort on the part of the patient."  [*Id.*]  Ultimately, Dr. Brahmbhatt opined that Mr. Mitchell suffered from chronic lower back pain and ordered x-rays be taken of his pelvis and lumbar spine.  [*Id.*]  Mr. Mitchell was prescribed a non-refillable low dosage of narcotics for severe breakthrough pain.  [*Id.*]

A pelvis x-ray indicated the presence of a large number of screws and fixation plates, in place in the left hemipelvis, confirming the occurrence of Mr. Mitchell's hip fracture and surgery. [Dkt. 18-8 at 21; R. at 346.] The report also found Mr. Mitchell's joint spaces preserved and the femoral heads of his hips showed normal configuration. [*Id.*] A spinal x-ray showed abnormal alignment of Mr. Mitchell's L4-L5 vertebrae but otherwise was an unremarkable study. [Dkt. 18-8 at 22; R. at 347.]

In September 2007, Dr. Thomas Mathews evaluated Mr. Mitchell, noting that Social Security Insurance and Medicaid needed more information about his disability. [Dkt. 18-8 at 132; R. at 457.] Dr. Mathews reported that Mr. Mitchell alleged that he had been experiencing severe low back pain since his accident in 1995, which had worsened over the past few years. [Dkt. 18-8 at 136; R. at 461.] Mr. Mitchell told Dr. Mathews his impairment is aggravated by weather and improves somewhat with medication; he also complained of some pain in his hip but not as severe as the pain in his back. [*Id.*] While conducting an examination, Dr. Mathews noted Mr. Mitchell was in severe pain and unable to perform a range of motion assessment. [*Id.*] Dr. Mathews also noted that Mr. Mitchell "had great difficulty arising from his chair and ambulating in the exam room." [*Id.*] The doctor's ultimate impression was "chronic low back pain, radiology normal." [*Id.*]

In October 2007, Mr. Mitchell saw Dr. French for a consultative physical examination. [Dkt. 18-8 at 40-44; R. at 365-369.] The evaluation acknowledged that Mr. Mitchell was treating his injuries with over-the-counter pain medication. [Dkt. 18-8 at 41; R. at 366.] Mr. Mitchell told Dr. French that he had very limited walking ability but was able to perform basic activities of daily living without assistance, apart from putting on his shoes. [*Id.*] Dr. French noted that Mr. Mitchell uses a cane and ambulates with a slow and antalgic gait that is not

unsteady, lurching, or unpredictable, and that Mr. Mitchell was uncomfortable lying supine and had difficulty getting on and off the exam table. [*Id.*] Mr. Mitchell's spinal movement was limited and Dr. French noted marked swelling of certain spinal muscles and spasms. [Dkt. 18-8 at 42; R. at 367.] Dr. French examined Mr. Mitchell's hips, which revealed no tenderness or atrophy. [Dkt. 18-8 at 43; R. at 368.] Hip flexion was limited. [*Id.*] Dr. French noted that Mr. Mitchell was unable to walk on his toes or heels, had very limited tandem walking, but he could perform half of a squat maneuver without difficulty and stand on either leg alone. [*Id.*] Dr. French's ultimate impression was that Mr. Mitchell suffered from low back and left hip pain but that Mr. Mitchell could work eight hours a day doing "sedentary light duty work" if he did not have to lift more than ten pounds, bend, squat, or crawl. [Dkt. 18-8 at 44; R. at 369.] Additionally, Dr. French recommended that Mr. Mitchell not work in extreme weather conditions, operate dangerous equipment, climb ladders, ropes or scaffolding, or work around unprotected heights. [*Id.*] Finally, contradicting an earlier conclusion he made, Dr. French concluded that Mr. Mitchell could sit in twenty-minute intervals and that he "could not stand at all." [*Id.*]

Dr. Fife, working for the state agency, reviewed Mr. Mitchell's file and completed a Residual Functional Capacity Assessment form. [Dkt. 18-8 at 46-53; R. at 371-378.] Dr. Fife concluded that Mr. Mitchell could lift and carry ten pounds frequently and twenty pounds occasionally, stand and/or walk for at least two hours in a workday with normal breaks, and sit for about six of eight hours in a workday. [Dkt. 18-8 at 47; R. at 372.] Dr. Fife stated that Mr. Mitchell's allegations regarding the nature and severity of the impairment-related symptoms and limitations were partially credible. [Dkt. 18-8 at 51; R. at 376.] Dr. Fife concluded that Dr.

French's statement that Mr. Mitchell "cannot stand at all" was not supported by x-ray findings or medical evidence on file. [Dkt. 18-8 at 52; R. at 377.]

In September 2008, Mr. Mitchell had a hernia repaired and Dr. Barrett examined Mr. Mitchell post-surgery. [Dkt. 18-8 at 94; R. at 419.] He noted that Mr. Mitchell is "somewhat limited in his activities due to his back and hip pain." [*Id.*] Dr. Barrett evaluated Mr. Mitchell again one month later and noted that he complained of constipation and urinary frequency. [Dkt 18-8 at 91; R. at 416.] Dr. Barrett noted that Mr. Mitchell had had extensive reconstruction on his hip and back and "currently walks with a cane." [*Id.*]

**B) Mr. Mitchell's Testimony**

At the hearing in December 2009, Mr. Mitchell testified that he last worked in September 2006 as a tow motor driver. [Dkt 18-2 at 34-35; R. at 33-34.] After losing his job, he received unemployment benefits and testified that he continued to look for work online and in person, but was unable to find anything. [Dkt 18-2 at 35; R. at 34.] Mr. Mitchell alleged that pain located in his back, hips, and legs limits his ability to do things. [Dkt. 18-2 at 35-36; R. at 34-35.] He asserted that he has suffered from this pain since the accident in 1995. [Dkt. 18-2 at 36; R. at 35.] When asked about aggravating factors, Mr. Mitchell testified that repetitive work is challenging. [*Id.*] He declared that his back and hips hurt "all the time." [Dkt. 18-2 at 41-42; R. at 40-41.] Specifically, his lower back "feels like somebody is taking an ice pick and jabbing it," [dkt. 18-2 at 41; r. at 40], and his hips feel like they are "aching and aching, like they're being ripped apart," [dkt. 18-2 at 42; r. at 41].

Mr. Mitchell testified that he takes a muscle relaxer and morphine. [Dkt. 18-2 at 37; R. at 36.] Even with medication, Mr. Mitchell said the pain experienced in his lower back still bothers

him.  [Dkt. 18-2 at 42; R. at 41.]  He testified that he sees a chiropractor twice a week to have his back adjusted and sometimes the chiropractor has difficulties aligning it.  [*Id.*]

When asked about his activities on the previous Friday, Mr. Mitchell testified that he watched television, lied on the bed, walked the dog at night, made a sandwich, and talked to his mother on the telephone.  [Dkt. 18-2 at 38; R. at 37.]  Mr. Mitchell tries to help his wife with household chores by washing dishes and sweeping when able.  [*Id*.]  His wife does the shopping, but he occasionally accompanies her if he is able and feels like it.  [Dkt. 18-2 at 38-39; R. at 37-38.]  Mr. Mitchell tries to stay busy while his wife is at work by doing puzzles and emailing.  [Dkt. 18-2 at 39; R. at 38.]

Regarding limitations, Mr. Mitchell testified that he could walk a city block but that it takes him a long time and he has to stop to sit down afterward.  [Dkt. 18-2 at 41; R. at 40.]  He also responded that he used a cane and walked bent over with a limp "all the time."  [Dkt. 18-2 at 43; R. at 42.]  Mr. Mitchell testified that he could stand for fifteen minutes and then his legs get weak on him and his back and hips hurt.  [Dkt. 18-2 at 40; R. at 39.]  In regards to sitting, Mr. Mitchell testified that he could sit in a chair for fifteen to twenty minutes before he would have to get up and keep moving.  [Dkt. 18-2 at 41; R. at 40.]  Mr. Mitchell testified that his wife drove him forty-five minutes to the hearing and that they stopped to get something to eat, get gas, and coffee.  [Dkt. 18-2 at 32-33; R. at 31-32.]  Mr. Mitchell claimed he last drove on the day before the hearing.  [Dkt. 18-2 at 32; R. at 31.]  Mr. Mitchell testified that he last attended church in August 2009 but that has not returned after his wife had a conflict with the preacher.  [Dkt. 18-2 at 40; R. at 39.]

When asked whether he could perform a hypothetical job requiring him to sit in a chair and put a nut and bolt together repeatedly throughout the day, Mr. Mitchell testified that he

would not be able to do that because he could only sit for ten or fifteen minutes before the pain would cause him to stop working.  [Dkt. 18-2 at 44; R. at 43.]

## C) Vocational Expert's Testimony

Vocational expert Gail Ditmore testified by telephone.  [Dkt. 18-2 at 28, 55-60; R. at 27, 54-59.]  The ALJ asked Ms. Ditmore to consider two hypotheticals involving an individual with the same age, education level, and work background as Mr. Mitchell.  [Dkt. 18-2 at 62; R. at 61.]  In the first hypothetical, the person could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk at least two hours in an eight-hour work day (with normal breaks), and sit about six hours (with normal breaks).  [Dkt. 18-2 at 57-58; R. at 56-57.]  Additionally, this individual was limited to pushing and/or pulling with his legs and he could never climb ladders, ropes, or scaffolds.  [*Id.*]  Lastly, he could only occasionally balance, climb ramps, stairs, stoop, kneel, crouch, crawl, and should avoid exposure to extreme conditions (*i.e.* heat, wetness, extreme heights).  [*Id.*]  Ms. Ditmore testified that based on these abilities and limitations, the individual could not perform Mr. Mitchell's past work but could perform unskilled sedentary jobs such as a cashier, sedentary assembler, and general production worker.  [Dkt. 18-8 at 59; R. at 58.]  Ms. Ditmore testified that these jobs exist both nationally and in Indiana.  [*Id.*]

The second hypothetical person was able to lift no more than ten pounds and was unable to bend, squat, or crawl.  [*Id.*]  This individual would be unable to operate automotive or dangerous equipment, climb ladders, ropes, or scaffolding, or work around unprotected heights.  [*Id.*]  Additionally, this individual could sit for up to twenty-minute intervals but was not able to stand.  [*Id.*]  Ms. Ditmore testified that no work would be possible for such an individual.  [Dkt. 18-2 at 60; R. at 59.]

## II.
## STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant

can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920(e).

### III.
### THE ALJ's DECISION

Using the five-step sequential evaluation set forth by the Social Security Administration, the ALJ determined Mr. Mitchell was not disabled.  [Dkt. 18-2 at 19; R. at 18.]  At step one of the analysis, the ALJ found that Mr. Mitchell had not engaged in substantial gainful activity[2] since the alleged onset date of his disability.  [Dkt. 18-2 at 12; R. at 11.]  At step two, the ALJ identified three severe impairments[3] suffered by Mr. Mitchell: a fractured left hip repaired with surgery by use of screws and plates, a severely injured spine resulting in displacement of vertebrae, and two repaired hernias.  [Dkt. 18-2 at 13; R. at 12.]  At step three, the ALJ found that Mr. Mitchell's impairments did not meet the criteria under Listing 1.04 (disorders of the spine) and deemed each of the symptom requirements set forth in Listing 1.04 unsupported by objective medical evidence.  [*See* 20 C.F.R. § 404, Subpart P, App. 1, Listing 1.04 (A-C)*; see also* http://www.ssa.gov/OP_Home/cfr20/404/404-ap10.htm.]  The ALJ noted "the claimant can ambulate effectively,"[4] before ultimately concluding Mr. Mitchell's combination of impairments do not meet or equal the criteria of any Listed Impairment in 20 C.F.R. § 404, Subpart P Appendix 1.  [Dkt. at 14; R. at 13.]  At step four, the ALJ found Mr. Mitchell did not have the residual functional capacity to perform any of his past relevant work.  [Dkt. 18-2 at 18; R. at 17.]

---

[2]  Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized).  20 CFR § 404.1572(a) and § 4.16.972(a).

[3]  An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

[4]  "Resulting in inability to ambulate effectively" is a symptom required by both Listed Impairment 1.04(C) and Listing 1.02A—the listing raised by Mr. Mitchell on appeal.

Finally, at step five, considering Mr. Mitchell's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ determined that jobs existed in the national economy that Mr. Mitchell could perform such as cashier, assembler, and a general production job. [Dkt. 18-2 at 18-19; R. at 17-18.] Based on these findings, the ALJ concluded that Mr. Mitchell was not disabled.

## IV.
## DISCUSSION

Mr. Mitchell challenges the ALJ's decision for three reasons. First, Mr. Mitchell contends that the ALJ committed multiple step three errors. Second, Mr. Mitchell argues that the ALJ erred by making an adverse credibility determination. Third, Mr. Mitchell claims that the ALJ erred at step five by concluding that he could perform some sedentary level jobs.

## A. Mr. Mitchell's Step Three Challenges

Mr. Mitchell alleges that the ALJ committed three reversible errors at step three. First, Mr. Mitchell claims that the ALJ erred by not discussing Listed Impairment 1.02A, given the evidence of Mr. Mitchell's hip problems. Second, Mr. Mitchell contends that the ALJ ignored certain evidence allegedly proving his disability. Third, Mr. Mitchell argues that the ALJ erred by failing to summon a medical advisor to testify.

### 1. Failure to Discuss Listing 1.02A

Mr. Mitchell argues that the ALJ committed reversible error by failing to discuss Listed Impairment 1.02A because Mr. Mitchell provided substantial medical evidence showing that his impairments met or medically equaled the requirements of that listing. [Dkt. 23 at 7, 13.]

A claimant is deemed disabled at step three if he has a condition with symptoms that meet or exceed the criteria of one or more of the Listed Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P, App. 1. Alternatively, if the claimant's symptoms do not correspond

exactly with a Listing's requirements, he can still be deemed disabled if medical evidence establishes that his symptoms are equal in severity and duration to those of a Listed Impairment. 20 C.F.R. § 404.1526(a), (b).  A claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing.  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Knox v. Astrue*, 327 Fed. Appx. 652, 655 (7th Cir. 2009) (citing *Ribaudo*).  The ALJ should mention the specific listings he is considering; failure to do so, if combined with a perfunctory analysis, may require a remand.  *Ribaudo*, 458 F.3d at 583.

Listing 1.02A—major dysfunction of a joint—has four requirements.  First, the claimant must have a "gross anatomical deformity."  Appendix 1 to Subpart P of Part 404—Listing of Impairments 1.02A; *see also* http://www.ssa.gov/OP_Home/cfr20/404/404-ap10.htm.  Second, the claimant must have chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint.  *Id.*  Third, there must be findings on acceptable medical imaging of, among other things, joint space narrowing.  *Id.*  Finally, the affected joint must be a weight-bearing joint, such as a hip, knee, or ankle, resulting in the inability to ambulate effectively.  *Id.*

At step three, the ALJ identified Mr. Mitchell's hip impairment as the first of three severe impairments producing more than a minimal limitation in his ability to work.  [Dkt. 18-2 at 13-14; R. at 12-13.]  The ALJ's opinion primarily focuses on Mr. Mitchell's back impairment, not his hip impairment.  This is not surprising, though, because most of the evidence on record addresses Mr. Mitchell's back issues, and his initial brief alleged disability due to a combination of intestinal and back impairments, not a hip impairment.  [*See* Dkt. 18-9 at 55-58; R. at 515-518.]

Mr. Mitchell alleges he provided evidence showing that his hip impairment met or equaled Listing 1.02A.[5]  [Dkt. 23 at 7-9.]  To support the gross deformity requirement, Mr. Mitchell cites a September 2006 x-ray showing that his hip fracture was repaired with "a large number of screws and fixation plates."  [Dkt. 18-8 at 21; R. at 346.]  To demonstrate the joint pain and stiffness with signs of limitation requirement, Mr. Mitchell cites a report by Dr. Barrett that Mr. Mitchell was "somewhat limited in his activities due to his hip and back pain."  [Dkt. 18-8 at 94; R. at 419.]  Mr. Mitchell also cites a report by Dr. Mathews,[6] [dkt. 18-8 132-136; r. at 457-461], finding that he was unable to perform range of motion assessment due to pain.  [Dkt. 18-8 at 136; R. at 461.]  For the requirement of medical imaging with joint space narrowing, Mr. Mitchell again cites the 2006 x-ray finding of a "pelvic-hip fracture repaired with a large number of screws and fixation plates."  [Dkt. 23 at 8.]  For the requirement that the impairment results in an inability to ambulate effectively, Mr. Mitchell cites evidence from Dr. Mathews that Mr. Mitchell "has great difficulty arising from his chair and ambulating in the exam room," [dkt. 18-8 at 136; r. at 461], and evidence from Dr. Barrett that Mr. Mitchell "currently walks with a cane."  [Dkt. 18-8 at 91; R. at 416.]

Although Mr. Mitchell discussed his hip impairment at the hearing and cited it as a reason he applied for disability benefits, [dkt. 18-4 at 16, 19; r. at 82, 85; dkt. 18-2 at 42; r at 41], he did not specifically raise Listing 1.02A.  The ALJ is not required to mention Listing 1.02A if the plaintiff fails to provide medical evidence exemplifying that his impairments meet or equal

---

[5]  Mr. Mitchell cites Dr. French's evaluation to support his argument that his combined impairments met or equaled Listing 1.02A, but, as detailed below, the Court finds that the ALJ provided sufficient reason for affording Dr. French's evaluation little weight.  Therefore, Dr. French's evaluation will not be discussed in this section.

[6]  Mr. Mitchell wrongly refers to the author of that report as Dr. Barrett when, in fact, the finding at issue was made by Dr. Mathews.  [Dkt. 18-8 132-135; R. at 457-460.]  Counsel should use caution when citing evidence in the record.

the requirements of that listing. After conducting a thorough examination of the evidence provided, the Court finds that Mr. Mitchell fails to make the requisite showing that his combined impairments meet or equal the criteria of Listing 1.02A. Mr. Mitchell does not direct the Court to any evidence he presented regarding the third requirement that there must be findings on acceptable medical imaging of joint space narrowing. While he recites medical imaging of his hip showing a "pelvic-hip fracture repaired with a large number of screws and fixation plates," [dkt. 23 at 8], he expressly ignores that the cited report concludes that Mr. Mitchell's "[j]oint spaces of the hips are preserved bilaterally. The femoral heads demonstrate normal configuration." [Dkt. 18-8 at 21; R. at 346.] This finding of expressly contradicts the third requirement of Listing 1.02A that Mr. Mitchell was required to show joint space narrowing.

Moreover, in the context of his finding that Mr. Mitchell did not meet Listing 1.04, the ALJ concluded that Mr. Mitchell could ambulate effectively. [Dkt. 18-2 at 14; R. at 13.] Both Listing 1.04 and Listing 1.02A incorporate the same definition of effective ambulation— 1.00B2b. Therefore, the ALJ's finding that Mr. Mitchell could ambulate effectively also undermines the fourth requirement of Listing 1.02A that the claimant's joint disorder must result in the inability to ambulate effectively.

Unlike cases reversed on appeal, *see Ribaudo*, 458 F.3d at 583, the ALJ did not provide a perfunctory step three analysis. The ALJ specifically discussed Listing 1.04, which applies to claimants with severe spine disorders resulting in back pain. As emphasized above, it is not surprising that the ALJ focused on issues surrounding Mr. Mitchell's back since the majority of the medical evidence focused on Mr. Mitchell's back. Because the evidence in the record shows that Mr. Mitchell failed to meet at least one of the requirements of Listing 1.02A, the ALJ's failure to discuss that listing is not grounds for remand.

### 2. Failure to Sufficiently Consider Evidence

Mr. Mitchell argues that the ALJ committed reversible error by rejecting Dr. French's medical evaluation and ignoring other evidence allegedly proving his combined impairments met or medically equaled that of Listed Impairment 1.02A.  [Dkt. 23 at 14-17.]

### a. Dr. French

The ALJ afforded little weight to the opinion of agency physician, Dr. Gregory M. French, MD, after finding his evaluation internally inconsistent and unsupported by the record as a whole.  [Dkt. 18-2 at 17; R. at 16.]  Mr. Mitchell argues that Dr. French's opinion contained substantial evidence proving disability under Listing 1.02A and alleges the evaluation was "arbitrarily rejected" without adequate explanation.  [Dkt. 23 at 16.]

When making a disability determination, an ALJ must consider "all relevant evidence," rather than cherry pick and analyze only that information supporting his final conclusion. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000).  When an ALJ does not discuss important evidence contradictory to his conclusion; the Court is unable to discern whether the ALJ considered such evidence in making his decision.  *Brindisi ex rel. Brindisi*, 315 F.3d 783, 786 (7th Cir. 2003).  Although the ALJ is not required to address every piece of evidence, he must build an accurate and logical bridge from the evidence to his conclusion.  *Clifford,* 227 F.3d at 872; *see also Ribaudo*, 458 F.3d at 584.

Generally, opinions that are inconsistent with the "record as a whole" are weighted less heavily than opinions that are consistent.  20 C.F.R. § 416.927(d)(4).  Also, records and opinions made by treating physicians who, among other things, have an "ongoing relationship with the claimant" are generally weighted more heavily than those of consulting physicians.  20 C.F.R. § 404.1527(d)(2)*; see also* 20 C.F.R. § 404.1502.  Non-treating physicians and opinions of treating

physicians that are afforded little weight should be evaluated for consistency and supportability. *See* 20 C.F.R. § 404.1527(d). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong and deserving of reversal." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

Dr. French was a consulting physician; therefore, his opinion is entitled to less weight than a treating physician with an ongoing relationship with the claimant. The ALJ explained that he afforded Dr. French's opinion little weight because it was internally inconsistent and unsupported by the record as a whole. [Dkt. 18-2 at 17; R. at 16.] The ALJ emphasized Dr. French's contradictory language: (1) "the claimant cannot bend, squat, crawl, . . . [or] stand at all" vs. (2) "the claimant can stand on either leg alone and perform a half of a squat maneuver without difficulty." [*Id*.] And as noted by the Commissioner, agency medical consultant Dr. Fife reviewed Mr. Mitchell's file and noted similar inconsistencies with Dr. French's testimony. [Dkt. 27 at 12.] Dr. Fife ultimately concluded that "Dr. French's finding 'he cannot stand at all' is not supported by medical evidence in file (only minimal x-ray findings)." [Dkt. 18-8 at 52; R. at 377.]

In light of the internal inconsistencies in Dr. French's opinion, the ALJ did not err by affording Dr. French's opinion little weight. The ALJ sufficiently explained his rationale, and the Court rejects Mr. Mitchell's argument to the contrary.

**b. Other Evidence**

Mr. Mitchell argues that the ALJ erroneously ignored other evidence in the record supporting a disability finding under Listing 1.02A. [Dkt. 23 at 14-17.]

First, Mr. Mitchell argues that while the ALJ cited Dr. Brahmbhatt's September 2006 evaluation, he ignored various portions of that evaluation that support a disability finding under

Listing 1.02A. [Dkt. 23 at 2; Dkt 30 at 5.] The Court has already concluded that Mr. Mitchell has not shown that he presented evidence of the third requirement of Listing 1.02A (acceptable medical imaging of joint space narrowing). Moreover, the evidence from Dr. Brahmbhatt's September 2006 evaluation that Mr. Mitchell cites focuses on his back impairment, not his hip impairment. And Dr. Brahmbhatt observed that Mr. Mitchell's facial expressions were at times exaggerated and that his range of motion was restricted "most likely because of poor effort on Mr. Mitchell's part." [Dkt. 18-8 at 24-25; R. 349-350.] Since a majority of Dr. Brahmbhatt's evaluation focused on Mr. Mitchell's back pain and he does not challenge the ALJ's conclusion that he did not meet Listing 1.04, Mr. Mitchell's argument that the ALJ erred by not including irrelevant information from Dr. Brahmbhatt's September 2006 evaluation fails.

Second, Mr. Mitchell argues the ALJ ignored findings from three evaluations (September 2007, September 2008, and October 2008) completed by treating physician Dr. Barrett.[7] [Dkt. 23 at 15-17.] Mr. Mitchell again argues that these findings support a finding that he met or exceeded Listing 1.02A. And again, the Court has already concluded that Mr. Mitchell has not shown that he presented evidence that he met or equaled all of the requirements of Listing 1.02A. None of the evidence Mr. Mitchell cites, which he claims the ALJ erroneously ignored, cures this defect. Therefore, Mr. Mitchell's argument fails.

### 3. Failure to Summon Medical Advisor

Mr. Mitchell argues that the previous errors committed in step three could have been avoided had the ALJ summoned a medical advisor to testify about the claimant's combined

---

[7] Mr. Mitchell refers to Dr. Barrett as a treating physician without explanation, [dkt. 23 at 17; dkt 30 at 7], likely relying on the notion that several visits constitutes an "ongoing relationship," as required by 20 C.F.R. § 404.1527(d)(2). Mr. Mitchell fails to recognize that one of the evaluations to which he refers (September 2007), was actually completed by Dr. Mathews, not Dr. Barrett. [Dkt. 18-8 at 132-135; R. at 457-460.]

impairments and whether they met or equaled a listing. [Dkt. 23 at 11-12.] Mr. Mitchell cites *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004), to support his argument. [Dkt. 23 at 11.]

The Commissioner asserts, and the Court agrees, that Mr. Mitchell's reliance on *Barnett* is misplaced. [Dkt. 27 at 13.] Although an ALJ must consider an expert's opinion when determining whether a claimant's impairment equals a listing, *see* 20 C.F.R. § 404.1526(b), the completion of certain forms by state agency physicians satisfies the ALJ's duty to summon an expert's opinion, as noted later in *Barnett*, 381 F.3d. at 670-71. A SSA-831-U5 form (Disability Determination and Transmittal Form) ensures that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration level of administrative review. SSR 96-6p; *see also* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-06-di-01.html.

Here, the ALJ relied upon Disability Determination and Transmittal Forms[8] to assist in determining whether Mr. Mitchell's impairments or combination of impairments equaled a listed impairment at step three. [Dkt. 18-3 at 2-5; R. at 62-65.] These forms satisfied the ALJ's obligation to obtain a medical opinion on the issue. Contrary to Mr. Mitchell's argument on reply, the Commissioner's position is not an "improper post hoc rationalization," [dkt. 30 at 9]; instead, it relies on evidence in the record.

---

[8] In the reply brief, Mr. Mitchell points out that these DDT forms were completed three and a half years before the ALJ issued his decision. [Dkt 30 at 9.] As an initial matter, it is well-settled that arguments made for the first time on reply are considered waived. *Hendricks v. New Albany Police Dep't*, 749 F. Supp. 2d 863, 872 (S.D. Ind. 2010). Moreover, the Court finds the medical record do not establish that Mr. Mitchell's condition changed in that time period (i.e., there are no new x-rays, treatments, medications, or a physician's opinion demonstrating a change of symptoms).

**B. Adverse Credibility Determination**

Mr. Mitchell argues that the ALJ's adverse credibility determination is contrary to the seven factors in Social Security Ruling 96-97p.  [Dkt. 23 at 18.]

The ALJ's credibility determination is entitled to special deference.  *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court."  *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).  Consistent with Seventh Circuit authority, this Court will not disturb a credibility finding "unless it is 'patently wrong in view of the cold record.'"  *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not "patently wrong.").

When evaluating the credibility of an individual's statements, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96-7p.  Under Social Security Ruling 96-7p, the ALJ must assess the following minimum factors:

> (1) The individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other

symptoms; and (6) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record. 20 C.F.R. §§ 404-1519 and 4165.929.

The root of Mr. Mitchell's claim is that the ALJ only focused on comparing the claimant's allegation with objective medical evidence, rather than applying the seven factors of SSR 96-7 when making his negative credibility determination. [Dkt. 23 at 18.] Language from the ALJ's opinion, however, illustrates the contrary.[9] The ALJ made substantial findings concerning the claimant's activity levels and credibility. Ultimately, the ALJ concluded that Mr. Mitchell's credibility was questionable because although he claimed he could only sit for fifteen minutes, he attended church with his wife until she had a disagreement with the pastor. [Dkt. 18-2 at 15-16; R. at 14-15.] Additionally, Mr. Mitchell claimed that his pain persisted with or without medication, but, as the ALJ pointed out, the record contained "no evidence of any attempts to adjust medications for pain." [Dkt. 18-2 at 16; R. at 15.] Moreover, as detailed above, Dr. Brahmbhatt observed that Mr. Mitchell's facial expressions were at times exaggerated and that his range of motion was restricted "most likely because of poor effort on Mr. Mitchell's part." [Dkt. 18-8 at 24-25; R. 349-350.]

---

[9] The Court notes that in the credibility section of his opinion, the ALJ used the pronoun "her" three times when referring to Mr. Mitchell. [Dkt. 18-2 at 15; R. at 14.] The Court is mindful of the difficulties that ALJs face due to a very heavy caseload and the temptation to use boilerplate language. *See Martinez v. Astrue*, 630 F.3d 693, 695 (7th Cir. 2011). The inclusion of the wrong pronoun casts doubt as to whether the argument is actually being made with respect to the claimant here and better care should be taken in the future so that the Court is not left with such a concern. Ultimately, however, for the reasons detailed herein, the Court finds that the ALJ built a logical bridge and adequately supported his adverse credibility finding regarding Mr. Mitchell.

Despite Mr. Mitchell's contentions to the contrary, the ALJ did consider the SSR 96-7p factors. He considered the first factor by noting daily activities mentioned by Mr. Mitchell in his testimony, including watching television, lying around, preparing simple meals, walking the dog, talking on the phone and computer. [Dkt. 18-2 at 15; R. at 14.] The ALJ also mentioned Mr. Mitchell's contentions about daily household chores that he cannot complete due to "not being able to bend over, not having the ability to stand long enough, and he cannot reach." [*Id*.] The ALJ dismissed these limitations by finding, "there is no support in the medical evidence for his contentions." The opinion notes that allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty and therefore the claimant's reported daily activities are considered to be outweighed by the other factors. [Dkt 18-2 at 16; R. at 15.] In regards to the second factor, the ALJ notes the intensity of Mr. Mitchell's pain, "excruciating tenderness even to the slightest touch," and also that "the pain has been present since his accident in 1995." [*Id*.] Regarding the third factor, the ALJ notes Mr. Mitchell's assertion that he can only sit for about fifteen minutes, which seems to be established as an aggravating factor, but later the ALJ dismisses Mr. Mitchell's claim because he testified in trial that he and his wife had attended church in August 2009. [*Id*.] Fourth, the ALJ sufficiently addressed the type, dosage, side effects, and effectiveness of Mr. Mitchell's medications. Also noted was Mr. Mitchell's statement that the pain persisted daily with or without medication and that he had been taking over-the-counter drugs up to the hearing. [*Id*.] The ALJ found it implausible that the Mr. Mitchell would have his medications (morphine and methadone) adjusted because of mental health related side effects, yet not adjusted due to ineffective ability to at least reduce pain. [*Id.*] With respect to the fifth factor, the ALJ noted that Mr. Mitchell testified to seeing a chiropractor two times per week to have his back adjusted. [*Id*.] But the ALJ also mentioned that this was

not generally the type of medical treatment one would expect for a totally disabled individual. Regarding the sixth factor, the ALJ mentioned the only surgery since the alleged disability onset date was for a hernia repair in 2008. [*Id.*] As for the seventh factor, the ALJ stated that he had considered medical opinion evidence, including the opinion of a state agency expert concerning Mr. Mitchell's physical limitations.

The Court concludes that the ALJ evaluated Mr. Mitchell's credibility using the seven factors required by SSR 96-7p. Throughout the ALJ's opinion, he provides reasons for discrediting Mr. Mitchell's allegations. [Dkt. 18-2 at 15-18; R. at 14-17.] The ALJ built an adequate logical bridge between the evidence and the result. In sum, the credibility evaluation was supported by evidence and sufficient explanation and was not patently wrong. Therefore, Mr. Mitchell's argument fails.

## C. Step Five

At Step Five, the ALJ concluded Mr. Mitchell could perform some sedentary level jobs, and was not disabled. [Dkt. 18-2 at 18-19; R. at 17-18.] Mr. Mitchell challenges that determination, alleging that the ALJ's RFC assessment omitted "all of the limitations" noted by Dr. French. [Dkt. 23 at 19.] Because the Court has already determined that the ALJ did not err by giving Dr. French's opinion little weight, the Court need not address Mr. Mitchell's Step Five challenge further.

## V.
## CONCLUSION

The standard for disability claims under the Social Security Act is stringent. Even claimants with substantial impairments are not necessarily entitled to benefits. *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can

find no legal basis to overturn the Commissioner's decision that Mr. Mitchell does not qualify for disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

07/27/2011

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com